**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-cv-24366-COOKE/DAMIAN

DANIELA CORTAZAR-GARCIA,

      Plaintiff,

vs.

WRIST AFICIONADO MIAMI, LLC,
WILLAM KAKON, VADIM YAKUBOV,
and EDDIE GOZIKER,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**
**ON THE PARTIES' JOINT MOTION TO APPROVE FLSA**
**SETTLEMENT AND DISMISS CASE WITH PREJUDICE [ECF NO. 38]**

      THIS CAUSE is before the Court on Plaintiff, Daniela Cortazar-Garcia's ("Plaintiff"), and Defendants, Wrist Aficionado Miami, LLC ("Wrist Aficionado"), William Kakon, Vadim Yakubov, and Eddie Goziker's (collectively, "Defendants"), Joint Motion to Approve FLSA Settlement and Dismiss Case with Prejudice [ECF No. 38] (the "Joint Motion"). This matter was referred to the undersigned by the Honorable Marcia G. Cooke, United States District Judge, for a Report and Recommendation as to the fairness of the Parties' proposed settlement. [ECF No. 39]. *See* 28 U.S.C. § 636(c).

      The undersigned has considered the Joint Motion, the proposed Settlement Agreement and Release, the Amendment thereto, the pertinent portions of the record, and relevant legal authorities. The undersigned also heard from the Parties, who appeared through counsel, by Zoom for a Fairness Hearing on May 18, 2022, and is otherwise fully advised in

the premises. For the reasons set forth below, the undersigned recommends that the Joint Motion be granted in part, the Settlement Agreement and Release be approved, and the case be dismissed with prejudice.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 2021, Plaintiff filed a four-count Complaint against Defendants alleging harassment (Count One); violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for unpaid minimum and overtime wages (Count Two); retaliation in violation of the FLSA, 29 U.S.C. § 215(a) (Count Three); and failure to pay wages and commissions (Count Four). *See* ECF No. 1 (the "Complaint"). According to the allegations in the Complaint, Defendant Kakon used his ownership of Wrist Aficionado to harass Plaintiff, who was an employee of Wrist Aficionado. *Id.* ¶¶ 10, 18. Plaintiff further alleges that Defendants retaliated against her after she made claims associated with Defendants' alleged improper business practices. *Id.* ¶ 43. Plaintiff claims Defendants' actions caused her to suffer a loss of income, as well as mental anguish, emotional distress, and embarrassment. *Id.* ¶ 48.

Moreover, Plaintiff alleges that Defendants did not pay her for the hours she worked on November 8, 9, 10, and 11, 2021, nor the commissions she made on sales those days – calculated by Plaintiff to be over $1,400. *Id.* ¶¶ 36–37; 51–56. Plaintiff also claims she worked in excess of fifty-five (55) hours per week and was never paid overtime for the hours worked in excess of forty (40) hours per week. *Id.* ¶ 38.

On January 27, 2022, Plaintiff filed her Statement of Claim. [ECF No. 10]. In the Statement of Claim, Plaintiff states that she worked fifteen (15) overtime hours per week from January 1, 2021, through November 11, 2021—a total of forty-five (45) weeks. *Id.* at 1.

2

Plaintiff alleges she is owed $29,538.00 in overtime wages and seeks an equal amount in liquidated damages under the FLSA. *Id.* Plaintiff also alleges that she worked forty (40) hours from November 8, 2021, through November 11, 2021, and is owed $1,379.20 in unpaid wages for that period, plus an equal amount in liquidated damages under the FLSA. *Id.* at 2. Thus, the total amount Plaintiff is seeking in the Statement of Claim is $61,834.40, inclusive of unpaid overtime, unpaid wages, and liquidated damages.[1]

On March 18, 2022, Plaintiff filed a Notice of Settlement. [ECF No. 32]. On March 21, 2022, the Court entered an Order administratively closing the case and directing the Parties to submit a Joint Motion for Approval of Settlement Agreement and a copy of the executed settlement agreement to the Court for review. [ECF No. 33]. On May 5, 2022, the Parties submitted the Joint Motion now before the Court seeking approval of their proposed settlement agreement, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), and dismissal of the action with prejudice and requesting the Court retain jurisdiction to enforce the terms of the settlement agreement. *See* Joint Motion.

In the Joint Motion, the Parties indicate that, in reaching the settlement, they determined that they have a bona-fide dispute as to the hours allegedly worked each week by Plaintiff and the overtime rate owed to her due to her compensation structure, which included salary and commissions. *Id.* at 3. The Parties also point out other factors that contribute to the complexity of their dispute, including the fact that Plaintiff's hourly and overtime rates could vary based on the timing of commission payments and amounts due, and that the amount of commissions earned by Plaintiff was inconsistent. *Id.* Therefore, the commissions

---

[1] The undersigned notes a minor computation error in the Statement of Claim. The correct amount for alleged unpaid overtime wages for the fourth quarter is $3,879.75, and therefore, the correct total unpaid overtime wages amount is $29,538.00.

earned by Plaintiff could range from making an alleged insignificant difference in the hourly rate to making a substantial difference in the rate and calculation. *Id.* The Joint Motion also indicates that the complexity, expense, and likely duration of the litigation weigh in favor of approval of the Settlement Agreement, as the Parties were able to reach a settlement early in the case without the necessity of excessive litigation and the tribulations of intrusive discovery or depositions into sensitive matters. *Id.* at 4.

## II.    APPLICABLE LEGAL STANDARDS

Section 206 of the FLSA establishes the federally mandated minimum hourly wage, and Section 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. 29 U.S.C. §§ 206, 207. An employer who violates the FLSA may be liable to its employee for both unpaid minimum wages or overtime compensation and for an equal amount in liquidated damages. 29 U.S.C. § 216(b). The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived" between employers and employees. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Nevertheless, there are two ways in which claims arising under the FLSA can be settled or compromised by employees: (1) if the payment of unpaid minimum wage/overtime pay is supervised by the Secretary of Labor; or (2) in a private lawsuit brought by an employee against his or her employer, if the parties present the district court with a proposed settlement agreement and the district court enters a stipulated judgment after scrutinizing the settlement for fairness. *See* 29 U.S.C. 216(c); *Lynn's*, 679 F.2d at 1352–53.

The Eleventh Circuit has held that the compromise of FLSA claims is allowed under the following circumstances:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's*, 679 F.2d at 1354. Thus, an employee may compromise a claim if the district court determines that the compromise "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

When evaluating an FLSA settlement agreement, district courts consider both whether the settlement is fair and reasonable to the employee (*i.e.*, "internal" factors), and whether the settlement frustrates the purpose of the FLSA (*i.e.*, "external" factors). Factors considered "internal" include: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241–44 (M.D. Fla. 2010). There is a "'strong presumption' in favor of finding a settlement fair." *Walker v. Kirkman Mgmt., LLC*, No. 20-1149, 2022 WL 1037369, at * 2 (M.D. Fla. Mar. 18, 2022) (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)). Additionally, "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the

amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

## III.   DISCUSSION

With the foregoing in mind, the undersigned considers the Parties' proposed Settlement Agreement and Release for fairness.

### A.   *The Settlement Amount*

Pursuant to the proposed Settlement Agreement and Release of Claims Under the Fair Labor Standards Act (the "Agreement"),[2] Defendants have agreed to pay Plaintiff a total sum of $39,500.00, which is comprised of $14,000.00 to Plaintiff as back wages, overtime compensation, and compensation for the alleged retaliation, and $25,500.00 to Plaintiff as liquidated damages and pre-judgment interest. Agreement, at ¶ 3. Defendants have also agreed to pay $7,000.00 to Plaintiff's counsel for attorney's fees and costs. *Id.* As indicated above and in Plaintiff's Statement of Claim, Plaintiff initially sought $61,834.40—comprised of $29,538.00 for alleged unpaid overtime wages, $1,379.20 in alleged unpaid regular wages, and $30,917.20 in liquidated damages. The settlement amount, not including the payment for attorney's fees and costs, is approximately sixty-four percent (64%) of the amounts originally sought. *See* Statement of Claim. Both Parties are represented by counsel and agree the negotiated terms of the Agreement are reasonable. *See* Joint Motion, at 4.

The undersigned has scrutinized the terms of the Agreement, considering the above referenced factors, and heard from the Parties, through their counsel, at a fairness hearing before the undersigned. Based on the Parties' representations and their expressed concerns

---

[2] The Parties sent the Agreement (and the Amendment thereto) to the Court for in camera review, and these documents were not made part of the record pursuant to the Confidentiality and Non-Disclosure provision in the Agreement.

regarding the alleged FLSA claims, the undersigned finds the settlement amount represents a fair and reasonable resolution of a bona fide dispute between the Parties under all the circumstances presented and that Plaintiff has not unfairly compromised her FLSA claims. The undersigned also finds the Agreement promotes the policy of encouraging settlement of litigation of FLSA claims. *Lynn's*, 679 F.2d at 1354.

Having found the settlement amount is fair and reasonable, the undersigned addresses specific terms of the Agreement.

**B.** *Attorney's Fees and Costs*

As part of the Agreement, Plaintiff's counsel will receive a total of $7,000.00 for attorney's fees and costs. *See* Agreement, at ¶ 3. In an FLSA action, the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). It is unclear from the Parties' Joint Motion and Agreement whether this amount was negotiated separately from the amount paid to Plaintiff for her FLSA claims. At the May 18, 2022, Fairness Hearing, the undersigned questioned the Parties regarding the amount to be paid to Plaintiff's counsel. The Parties represented that the amount was negotiated separately from the amount paid to Plaintiff for her FLSA claims, such that Plaintiff agreed the settlement amount was fair, separate and apart from consideration of the fees and costs paid to her counsel.

Based on the Parties' representation that Plaintiff's attorney's fee was agreed upon separately and without regard to the amount paid to Plaintiff, and finding the Agreement is otherwise reasonable on its face, the undersigned finds there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees paid to her attorney. Therefore, the Court may approve the Agreement without separately considering the

reasonableness of the fee to be paid to Plaintiff's counsel. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

In any event, the undersigned finds that the fees to be paid to Plaintiff's counsel are reasonable under the circumstances presented. The Court may rely on its own experience in determining reasonableness of fees and the undersigned does so here. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court, either trial or appellate, is itself an expert on the question [of reasonable hourly rates and hours expended] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))).

Accordingly, the undersigned finds the fees to be paid to Plaintiff's counsel pursuant to the Agreement is reasonable and has not adversely affected the amounts paid to Plaintiff under the Agreement.

## C. *Termination of Confidentiality and Non-Compete Agreement and Letter of Employment*

As a material inducement for Plaintiff to enter into the Agreement, Defendants agree to terminate the Employee Confidentiality and Non-Compete Agreement signed by Plaintiff as a condition of her employment with Defendants and to waive and discharge Plaintiff from any claims arising from those provisions. Agreement, at ¶ 4. The termination of these provisions to which Plaintiff would otherwise be bound is a valuable material term for her benefit, over and above the monetary terms of the Agreement. In addition to terminating the Employee Confidentiality and Non-Compete Agreement, Defendants will provide Plaintiff with a letter of employment affirming the dates she was employed, the positions she held, and her rate of pay. *Id.* ¶ 5(b).

### D. *Mutual Releases*

The Agreement also provides for a release of any and all FLSA claims Plaintiff may

have against Defendants:

> Plaintiff hereby knowingly and voluntarily releases and forever discharges
> Defendants, individually and collectively, and their past and current owners,
> officers, directors, shareholders, members, employees, agents, representatives,
> parent corporations, predecessors, successors, assigns, subsidiaries, affiliates,
> attorneys, and insurers, both individually and in their official and/or
> professional capacities (collectively "Releasee Defendants") of and from any
> and all claims under the FLSA against any of the Releasee Defendants which
> Plaintiff has relating to the above referenced matter, or might have as of the
> date of the execution of this Agreement.

*Id.* ¶ 2(c). The Agreement contains a similar release of any claims Defendants may have

against Plaintiff:

> Defendants hereby knowingly and voluntarily release and forever discharge
> Plaintiff, and her past and present agents, representatives, insurers,
> predecessors, successors, assigns, and affiliates (collectively "Releasee
> Plaintiff") of and from any and all claims relating to the above referenced
> matter, or that they might have as of the date of the execution of this
> Agreement.

*Id.* ¶ 2(d).

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the

employer extracts a gratuitous (although usually valueless) release of all claims in exchange

for money unconditionally owed to the employee" and, therefore, such releases "confer[ ] an

uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*,

729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010) (footnote omitted). As such, "[a]

compromise of an FLSA claim that contains a pervasive release of unknown claims fails

judicial scrutiny." *Id.* at 1352; *see also Bradford v. Ancient City Grp. LLC*, No. 21-513, 2022 WL

549589, at *3 n.2 (M.D. Fla. Feb. 15, 2022) ("Some judges will not approve an agreement to

settle a FLSA claim that includes a general release because, without an indication of the value

of the released claims, the fairness and reasonableness of the compromise cannot be determined."); *King v. Premier Fire Alarms & Integration Sys., Installation Div., Inc.*, No. 20-60064, 2021 WL 7540777, at *1 (S.D. Fla. Dec. 17, 2021) (denying without prejudice joint motion to approve FLSA settlement where "the Agreement contains unbounded and pervasive release provisions" requiring the plaintiff to "release many known and unknown legal claims that have nothing apparent to do with the current FLSA dispute"). Nevertheless, "if a plaintiff is given compensation in addition to that to which he or she is entitled under the FLSA, then general releases can be permissible." *Herrera v. FS Invs. of America, Inc.*, No. 20-2465, 2021 WL 1602120, at *2 (M.D. Fla. Apr. 8, 2021).

The undersigned notes that Plaintiff has not agreed to a general release but instead, only agrees to release any claims under the FLSA, a narrowly drawn release. The Agreement does not explicitly provide separate consideration for the mutual releases, and the Parties do not address the provisions in their Joint Motion. However, at the Fairness Hearing, the undersigned addressed the release provisions of the Agreement with the Parties. Counsel represented that the releases were a significant factor in the Parties' negotiations, that the termination of the Employee Confidentiality and Non-Compete Agreement and letter of employment are separate consideration for Plaintiff's release of her FLSA claims, and that the settlement amount is partly attributable to the inclusion of the releases. Accordingly, the undersigned finds that the mutual release provisions do not undermine the fairness of the Agreement.

### E.  *No Re-Employment Provision*

The Agreement also contains a "No Re-Employment" provision in which Plaintiff "affirms that upon payment of the amounts set forth [in the Agreement], she will not reapply

or apply for employment at any of the Defendants' business[es]." Agreement, at ¶ 5(a) (alteration added). The Joint Motion does not address this provision nor whether additional consideration was provided to Plaintiff for it.

As the Middle District has specified, "an agreement not to employ a plaintiff in the future plainly injures the plaintiff, and when the parties' briefing does not address the issue of additional consideration, courts cannot determine whether the inclusion of such provision in a settlement agreement represents a fair and reasonable resolution of the parties' FLSA dispute." *Duffey v. Surfside Coffee Co.*, No. 20-cv-501, 2022 WL 766904, at *4 (M.D. Fla. Jan. 1, 2022) (citation and internal quotation marks omitted). Such provisions, nonetheless, may be approved where supported by sufficient additional consideration. *Id.* Moreover, "[n]o reemployment clauses are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants." *Holmes v. Swissport Fueling, Inc.*, No. 16-cv-669, 2019 WL 1370542, at *6 (M.D. Fla. Mar. 11, 2019) (citation omitted); *see also Cruz v. Winter Garden Realty, LLC*, No. 12-cv-1098, 2013 WL 4774617, at *3 (M.D. Fla. Sept. 4, 2013) ("Likewise, where a plaintiff indicates that she does not desire re-employment, the inclusion of a waiver of future employment does not render the settlement unfair").

Here, the Agreement does not explicitly identify separate consideration for Plaintiff's waiver of future employment with Defendants. However, during the Fairness Hearing, the undersigned addressed this provision with counsel, both of whom agreed the provision enabled the Parties to reach a swifter resolution. Moreover, Plaintiff's counsel asserted that Plaintiff fully understands the provision and its implications and has no interest in seeking future employment with Defendants. Accordingly, the undersigned finds the inclusion of a

waiver of future employment provision, despite the lack of specific additional consideration, does not undermine the fairness of the Agreement under the circumstances presented.

### F. *Confidentiality Provision*

According to the Joint Motion, the Parties agreed to a confidentiality provision for Plaintiff's benefit. Joint Motion, at 3. However, a confidentiality provision was not included in the Agreement. At the Fairness Hearing, the undersigned notified the Parties of this discrepancy and informed them that the Court is not inclined to retain jurisdiction if the Settlement Agreement is confidential and not filed in the Court's record. Shortly after the Fairness Hearing, the Parties submitted an amendment to the Agreement that contains the following confidentiality provision:

> The terms and provisions of this Agreement are agreed to be strictly confidential. Neither the Parties nor their attorneys shall disclose or communicate the settlement terms provided for in this Agreement without the prior written consent of all the Parties or the Court, except to the extent such disclosure may be made to the attorneys and accountants for the Parties, and except to the extent that such disclosure is permitted herein or compelled by proper judicial process. The confidentiality provisions of this Agreement are material terms of this Agreement and any breach of this provision will constitute a material breach of this Agreement.

Amend. to the Agreement, ¶ 13.

Confidentiality provisions in FLSA settlement agreements are often rejected by district courts because courts consider them to "thwart Congress's intent to ensure widespread compliance with the FLSA." *Herrera*, 2021 WL 1602120, at *2 (citing cases). Moreover, "[j]udicial records are presumed to be public documents because '[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.'" *Smith v. Target Corp.*, No. 21-80307-CIV, 2021 WL 5366876, at *1 (S.D. Fla. Nov. 18, 2021) (quoting *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)). "The common

law right of access may be overcome by a showing of good cause, which requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'" *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001).

At the Fairness Hearing, the undersigned heard from counsel regarding the confidentiality provision. The Parties agree that the confidentiality provision is fair and reasonable. Furthermore, Plaintiff's counsel represented that Plaintiff is strongly in favor of the confidentiality provision due to the personal history between the Parties, the small size of the local luxury watches retail network, and Plaintiff's desire to continue working in the industry. Under the circumstances presented here, the undersigned finds that the Parties have shown good cause to keep the Agreement confidential and not require that it be filed in the public record.

### G. *Retention of Jurisdiction*

"To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough." *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012). In the Joint Motion, the Parties request that the Court retain jurisdiction to enforce the terms of the Agreement. Joint Motion, at 3–4.  In light of the Parties' agreement that the settlement should remain confidential and their desire not to include the Agreement in the Court's public record, the undersigned recommends that the Court not reserve jurisdiction to enforce the terms of the Parties' Agreement. Instead, in the event of a claim for breach of the terms of the Agreement, the Parties may proceed with a breach of contract action in the state court.

## IV.    FINDINGS

The undersigned has considered the factors outlined in *Lynn's Food Stores*; the factual positions of the Parties; the existence (or lack thereof) of documents supporting or corroborating the Parties' positions; the strengths and weaknesses in the Parties' respective positions; and the Parties' desires to resolve their disputes without protracted litigation.

As set forth above, the undersigned finds that the settlement represents a genuine compromise of a bona fide dispute. Defendants, who deny liability, have agreed to pay Plaintiff more than they believe Plaintiff is due under the law, and the Parties have agreed to settle as a result of reasonable strategic and financial considerations.

The undersigned also finds that the settlement occurred in an adversarial context and that there are genuine coverage and computation issues in dispute. The undersigned further finds that the settlement reached by the Parties represents a reasonable compromise by both sides and is fair and reasonable and that the amount claimed as payment for Plaintiff's counsel's fees and costs is also reasonable.

## V.    RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully recommends that the Joint Motion to Approve FLSA Settlement and Dismiss Case with Prejudice [ECF No. 38] be **GRANTED IN PART**, that the Settlement Agreement and Release be **APPROVED** as fair and reasonable, and that the case be **DISMISSED WITH PREJUDICE**.

The undersigned also recommends that the Court **DENY** the Parties' request to retain jurisdiction, close the case, and deny all pending motions as moot.

14

The Parties will have **one (1) calendar day**[3] from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Court Judge. Failure to file objections timely shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 27th day of May 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:      The Honorable Marcia G. Cooke
         Counsel of Record

---

[3] Counsel stated during the fairness hearing that they do not object to the undersigned recommending that the settlement be approved and shortening the time to file objections to one day.

15